## G. W. WALLS v. W. J. STRICKLAND.

(Filed 17 October, 1917.)

**Telephone Companies—Public-service Corporations—Statutes—Courts—Jurisdiction—Corporation Commission.**

A telephone company, serving the public, must discharge its duties impartially and without discrimination; and where, in violation of this duty, it refuses to install a telephone instrument and connection in the residence along its lines for one applying for the same, who offers to pay in advanve for the same service rendered to others, a *mandamus* will lie; and the statute giving general control of such companies to the Corporation Commission does not oust the court of its jurisdiction to compel the company to perform a public duty it owes to an individual.

CLARK, C. J., concurring.

BROWN, J., concurring, in which opinion the other justices concur.

APPEAL from *O. H. Allen, J.,* heard at chambers, LEE County, 8 July, 1917.

This is an action for a *mandamus* to compel the defendants, owners of a telephone line, to install a telephone.

The facts are set out in the judgment rendered, which is as follows:

This cause coming on to be heard before the undersigned judge of the Superior Court, at chambers, and being heard, and it appearing that the plaintiff, more than ten days before the return date of the summons, caused summons to be served with a copy of his complaint on the defendant, and that on the return date the parties appeared, and the defendant demurred to the plaitniff's complaint, which demurer was overruled and defendant excepted, and the defendant filed answer; and that upon the pleadings the parties joined issue, which was heard upon the proofs of the parties, no jury trial being demanded, upon considering the proofs offered and the arguments of counsel, the court finds the facts to be:

1. That the plaintiff is engaged in business in Lee County, and is a resident thereof, and that the defendant is a resident of Chatham County.

2. That the defendant, at and before the commencement of this action, was, and now is, engaged in furnishing telephone service to the public generally, with a central office located at Moncure, N. C., with lines extending from this point to Pittsboro, Merry Oaks, Osgood, and by the plaintiff's place of business at Lockville to Sanford; and the defendant has established regular tariffs for residence and business service, and for toll messages over his and connecting lines.

3. That prior to 20 May, 1917, the defendant furnished such service to the plaintiff at regular rates.

4. That on said date the defendant discontinued said service.

5. That said service was not discontinued by reason of any improper use of said 'phone by the plaintiff, or by reason of any failure of plaintiff to observe any rule or regulation established by the defendant for the conduct of his telephone business.

6. That prior to the institution of this action the plaintiff tendered to the defendant all rents due, and the regular rental for one month in advance for a business 'phone, and demanded that the defendant render him service without discrimination and under the same rules and regulations service is furnished to other patrons of the defendant.

7. That the defendant refused, and still refuses, to furnish said service to the plaintiff.

Upon the foregoing facts the court doth adjudge: That the refusal of the defendant to furnish service to the plaintiff on the same terms and under the same conditions it is furnished to the general public is a discrimination against the plaintiff by the defendant; that said defendant is hereby directed and commanded, on or before 1 August, 1917, to install a telephone instrument in the plaintiff's premises and to connect the same with the telephone system operated by the defendant, and on and after date to furnish to the plaintiff service without discrimination upon the same terms and conditions that service is furnished to the public generally.

It is further ordered that the defendant pay the costs of this action, to be taxed by the clerk.                    O. H. ALLEN,
*Judge Presiding.*

The defendants excepted and appealed, upon the ground that telephone companies being subject to the control and regulation of the Corporation Commission, the courts have no jurisdiction of the action.

*Hoyle & Hoyle for plaintiff.*
*H. A. London & Son for defendant.*

ALLEN, J. The error in the position of the defendants is in failing to distinguish between the regulation and control of telephone companies,

which, as to individuals and corporations, are committed by statute to the Corporation Commission (Rev., sec. 1096, chap. 966, Laws 1907), whether exclusively so or not we need not say, and the refusal to perform a duty to the plaintiff, arising upon facts that are established.

If the duty exists upon the facts found, there is nothing for the Corporation Commission to hear and investigate, and it only remains for the courts to compel performance of the duty.

The question was considered in *Godwin v. Telephone Co.*, 136 N. C., 259, prior to the amendment of 1907, it is true, but when, as said in the opinion, telephone companies were placed by the Corporation Commission Act "on the same footing as to public uses as railroads," and it was then held that telephone companies, serving the public, must discharge their duties impartially and without discrimination, and that the writ of *mandamus* issued by the courts was the proper remedy to enforce the performance of the duty.

The Court declares the doctrine as follows: "A *mandamus* lies to compel a telephone company to place telephones and furnish telephonic facilities without discrimination for those who will pay for the same and abide the reasonable regulations of the company. This is well settled. *S. v. Telephone Co.*, 52 Am. Rep., 404; Am. and Eng. Ency. (2d Ed.), 1022; 19 *ib.*, 877; Joyce on Electric Law, sec. 1036, and numerous cases cited by all these. In *Telegraph Co. v. Telephone Co.*, 61 Vt., 241, 5 L. R. A., 15 Am. St. Rep., 893; *s. c.*, 3 Am. Elec. Cases, at p. 435, it is said: 'A telephonic system is simply for the transmission of intelligence and news. It is, perhaps, in a limited sense, and yet in a strict sense, a common carrier. It must be equal in its dealings with all.' That case cited many authorities, which are, indeed, uniform, that the telephone business, like all other services fixed with public use, must be operated without discrimination, affording (equal rights to all, special privileges to none). 'Telephones are public vehicles of intelligence, and they who own or control them can no more refuse to perform impartially the functions that they have assumed to discharge than a railway company, as a common carrier, can rightfully refuse to perform its duty to the public,' is said in *Telephone Co. v. Telegraph Co.*, 66 Md., 399, at p. 414; 59 Am. Rep., 167, which is another very instructive and well-reasoned case upon the same subject. Telephone companies are placed by our Corporation Act on the same footing, as to public uses, as railroads and telegraphs."

This case was approved in *Telephone Co. v. Telephone Co.*, 159 N. C., 16, decided after the amendments of 1907, and the jurisdiction to enforce performance of a duty by *mandamus* was recognized and exercised.

The Court says, in the latter case, of the duty and the remedy: "It is very generally recognized that a telephone company acting under a

*quasi* public franchise, is properly classified among the public-service corporations, and as such is subject to public regulation and reasonable control, and is required to afford its service at uniform and reasonable rates and without discrimination among its subscribers and patrons for like service under the same or substantially similar conditions. *Godwin v. Telephone Co.,* 136 N. C., 258. . . . . In regard to the form of remedy available where, as in this State, the same court is vested with both legal and equitable jurisdiction, there is very little differenc in its practical results between proceedings in *mandamus* and by mandatory injunction, the former being permissible when the action is to enforce performance of duties existent for the benefit of the public, and the latter being confined usually to causes of an equitable nature and in the enforcement of rights which solely concern individuals. High on Injunctions (4th Ed.), sec. 2. Owing to the public interests involved, in controversies of this character, it is generally held that *mandamus* may be properly resorted to. *Godwin v. Telephone Co., supra; Commercial Union v. Telephone Co., supra; Mahan v. Telephone Co.,* 132 Md., 242; *Yancy v. Telephone Co.,* 81 Ark., 486."

These authorities are decisive against the defendants.

Affirmed.

CLARK, C. J., concurring: The Constitution, Art. I, sec. 19, provides that "The ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." In proceedings before the Corporation Commission there is no jury trial provided, and hence if no appeal lies therefrom by the plaintiff he is deprived of this sacred and inviolable right. It is solely upon the ground that an appeal gives the right of trial by jury that the acts creating Recorders courts have been held constitutional. *S. v. Lytle,* 138 N. C., 738; *S. v. Shine,* 149 N. C., 482, and many other cases. We have held that an appeal lay from the county commissioners. *Young v. Rollins,* 90 N. C., 131; *Lambe v. Love.* 109 N. C., 305. And even that where an act gives no appeal the Court will grant a writ to bring up the case on appeal. *Hillsboro v. Smith,* 110 N. C., 418; *Perry v. Commissioners,* 130 N. C., 560. If no appeal lies from the Corporation Commission, it is unconstitutional, as we held the Recorders' courts would be if no appeal were allowed.

In *Corporation Commission v. R. R.,* 170 N. C., 560, the majority of opinion held that no appeal lay for the plaintiff or petitioner, though Revisal, 1070, provides: "From all decisions or determinations made by the Corporation Commission *any party affected thereby* shall be entitled to appeal." And Laws 1907, chap. 469, sec. 6, gave the right of appeal to "*all persons* and corporations affected by the action of the Corporation

WALLS *v.* STRICKLAND.

Commission." The majority, however, held that an appeal lay only by the Corporation Commission itself from its own decision, or by the defendant corporation.

It was in consequence of this decision, doubtless, that the plaintiff avoided applying to the Corporation Commission in this case, for fear that he would lose his constitutional right of trial by jury, and he had therefore an inalienable and undeniable right to bring this action in a court where he could have a jury trial. However, since that time, this Court has, I think, in a unanimous opinion, overruled the decision above quoted by ignoring it and passing upon an appeal which was taken from the Corporation Commission to the Superior Court, and from that court to this. *R. R. v. R. R.,* 173 N. C., 413. In this latter case it is recited: "This is an appeal by the petitioner, the Laurinburg and Southern Railroad Company, from a judgment of Wake Superior Court, which judgment affirmed the order of the North Carolina Corporation Commission dismissing the petition filed before the Corporation Commission by the petitioner, setting out the judgment of the Corporation Commission." Of this latter case we took jurisdiction and recognized that the case was properly before us on an appeal by the petitioner to the Superior Court, and thence to this Court.

This was necessarily an overruling of the previous decision, which had held that no appeal lay from the Corporation Commission except by itself or the defendant. Otherwise, this Court was without jurisdiction to render any decision, and the case was *coram non judice.* As this last opinion is unanimous, this should be taken as a reverter to the ruling of the Court, in *S. v. R. R.,* 161 N. C., 270, that an appeal by the plaintiff will be adjudicated in this Court.

The only difference between this last case (173 N. C., 413) and that in 170 N. C. is, that in this latest case the plaintiff is a corporation, but it was not held, and surely will not be held, that a corporation has a right to appeal when an individual has not. The decision in 170 N. C. did not so hold, but was put upon the ground that *the petitioner* has no right to appeal.

The last decision (173 N. C.) accords with *S. v. R. R., supra,* and the wording of the Revisal and the act of 1907 (see 170 N. C., at p. 569); and if the ruling in 173 N. C. is the abiding decision of the Court, there will no longer be cause why, as in this case, plaintiffs should avoid applying to the Corporation Commission, lest they lose thereby their constitutional "sacred and inviolable right" to a jury trial. The matter is settled right by the last unanimous opinion. The maturer judgment of the Court, like that of an individual, should prevail. If, however, there remains any doubt about the matter, every plaintiff has a constitu-

tional right to proceed in every case before the Superior Court instead of before the Corporation Commission. This will greatly reduce the business in that court.

In the case in 170 N. C., 560, *supra,* the plaintiffs, or petitioners, as it may be preferred to call them, sued in their own behalf and interest, as well as on behalf of the public, and they surely could appeal on behalf of any party for whom they could bring an action, whether it was themselves or the public.

Since an appeal admittedly lies, in all cases, by a *defendant,* from the Corporation Commission, and the court above passes upon the law, and a jury upon the facts, the judge and jury are equally of capacity to pass upon identically the same case when the appeal is by the plaintiff. The discrimination which forbids the latter to appeal is created solely by the court, and not by any statute, for Revisal, 1074, permits "any party *affected by any decision* of the Corporation Commission" to appeal, and Laws 1907, chap. 469, sec. 6, makes this plainer by providing presumedly in the interest of the public, where an action is on their behalf, *"all persons* and corporations *affected* by the action of the Corporation Commission" may appeal.

The Corporation Commission (originally the Railroad Commission) was established for the very purpose of protecting the public and the individual citizen from arbitrary conduct in the operation of railroads. But if plaintiffs, seeking relief, either for themselves or on behalf of the public, cannot appeal, they are thus deprived of the rights which they had before the creation of the commission, and instead of being protected are subjected to any decision, however arbitrary or erroneous it may be. Even in the matter of fixing rates, an appeal is provided by Revisal, 1078, 1079. Revisal, 1054, makes the Corporation Commission a "court of record," and if it can appeal from its own decisions we have the singular spectacle that under Revisal, 1074, it has ten days to serve on itself an appeal and an assignment of errors in its own decisions. Surely nothing like this has ever existed before, either here or elsewhere.

I put my concurrence in this case upon the ground that, unless the ruling in 170 N. C., 560, which held that a *plaintiff* cannot appeal, is overruled by the later case in 173 N. C., 413, then the Corporation Commission is an unconstitutional body. If a plaintiff (unless a corporation) is deprived of the right to appeal, and of the right to a jury trial, though all defendants and corporations can appeal, such discrimination is in violation of the fundamental right of the citizen, and entitles this plaintiff, and any plaintiff, to seek his rights in the Superior Court, in all cases.

What litigant, and what counsel, if there is any alternative, will bring an action in any court where, if unsuccessful, he has no right of appeal, to have the rulings of law or fact reviewed, but his opponent has?

BROWN, J. I fully concur in the opinion of the Court written by *Justice Allen,* and would have nothing to say, but that I cannot let pass unnoticed the statement in the concurring opinion of the Chief Justice that the case of *Corporation Commission upon relation of W. D. Redfern and others,* 170 N. C., 560, is "overruled by a unanimous Court," by the subsequent case of *State upon relation of Laurinburg and Southern Railway v. Seaboard Air Line,* 173 N. C.; 92 S. E. Rep., 150.

The former case was a controversy over the location of a railroad station, wherein it appeared that the citizens of the community were divided among themselves as to where it should be located. The Corporation Commission visited the place and located the station. The dissatisfied citizens appealed to the Superior Court. The judge of that court dismissed the appeal. This Court affirmed the judgment, holding that upon the facts presented upon that record the appeal was properly dismissed.

The last-named case was a controversy presented to the Corporation Commission between two railroads in regard to certain contractual rights and liabilities at a crossing of the two roads. The commission held that it had no power to interfere with the written contract entered into between the parties. Travis, chairman, concluded the opinion of the commission with these words:

"The conclusion to which we have come, therefore, is that, while this commission clearly thinks that the cabin door interlocking plant would be suitable and adequate for this crossing, it does not think that it has the power to order that this system be put in, and no other, without improperly interfering with the contractual rights of the defendant in the premises, and the petition is therefore dismissed."

In the *Redfern case* the controversy arose over a location of a railroad station, a purely administrative matter. The appellants had no personal or property rights involved, and no interest, except what was common to the whole community.

In the *Laurinburg Southern case* property rights and contractual obligations were involved, in which both railroads were interested.

This Court entertained both appeals and held that the record in the *Redfern case* presented no facts that justified an appeal to the Superior Court.

In the *Laurinburg Southern case* the appeal was also entertained by us, and we held that the Corporation Commission properly dismissed the

petition, as it had no power upon the fact presented to interfere with the contract entered into by both roads.

It is so manifest that the two cases are perfectly consistent with each other and in line with well-settled legal principles that I forbear to discuss the matter.

It is stated in that concurring opinion that it was in consequence of the decision of this Court in the *Redfern case* that plaintiff avoided applying to the Corporation Commission, for fear he would lose his constitutional right of trial by jury, and therefore he applied to the Superior Court, where he could get it.

While I think, with entire deference, that the whole discussion is irrelevant tto any matter now before this Court, I cannot forbear to say that if such was plaintiff's motive, his conduct is very singular. The record shows that he made no demand for a jury trial, but on the contrary permitted the judge to find the facts about which there appears to be little if any dispute.

I am authorized to say that the other Associate Justices concur with me in this opinion.