WALKER, J., dissenting; ALLEN, J., concurring in the dissenting opinion.
This is a proceeding in mandamus heard by his Honor, Judge Ray, in Guilford County Superior Court, 14 September, 1920. The petition for a writ of mandamus, duly verified, was filed by the plaintiff according to the statute. On the return day in apt time the defendant filed a petition for removal of the proceeding to the District Court of the United States for the Western District of North Carolina. The petition was in due form, accompanied by the proper bond and in all respects regular. The judge denied the motion to remove, and the defendant appealed.
The motion to remove this cause to the Federal Court is based upon the contention that this proceeding, while denominated a petition for a writ ofmandamus, is in fact a "suit of a civil nature at common law or in equity," of which the Federal Court has jurisdiction.
It seems to be well settled that a proceeding for a writ of mandamus in a State court is not a suit of a civil nature at law or in equity which can be removed from the State to the Federal Courts. 18 R. C. L., sec. 6. This is the decision of the Supreme Court of the United States in Rosenbaum v.Bauer, 30 Law Ed., p. 744. The question, then, to be considered is, Is this in fact a mandamus proceeding?
The record discloses that this is not an ordinary action returnable to term time in the manner prescribed by law for civil action. It seems to have been brought by law in strict accordance with the provisions of the statute regulating proceedings in mandamus. Pell's Revisal, secs. 822-824.
An examination of the complaint discloses that the cause of action is one for the enforcement of which mandamus has been held to be the proper remedy. Briefly stated, the plaintiffs allege substantially that the defendant is under legal obligations to furnish them electric current as a public-service corporation engaged in furnishing electric current to the public.
The reciprocal rights and duties, liabilities and allegations between the North Carolina Public Service Corporation and the Southern Power Company are set out in the opinion of this Court in 179 N.C. 19, and in the opinion of the Court upon a rehearing of the same case, 179 N.C. 30. It is not necessary to go into that matter now as the allegations of the petition, for writ of mandamus must be taken to be true so far as this matter for removal is concerned. The substance of this petition is that the defendant is now furnishing plaintiff with electric current, but has notified plaintiffs that it will cease to do so on and after 1 January, 1921. Plaintiffs aver that it is the legal duty of the defendant to continue to furnish the said current after 1 January, and upon such reasonable terms and rates as may be fixed by the Corporation Commission in case the parties fail to agree among themselves. Plaintiffs aver that this duty which the defendant has assumed, a public-service corporation under the laws of North Carolina, is a continuous duty, and that the defendant may be compelled to perform it by writ of mandamus. The prayer of the petition is as follows:
"Wherefore, plaintiffs pray for a writ of mandamus against the defendant power company to compel it to continue to furnish electric current and power to the public-service company through its substations at Greensboro and High Point, to operate the street car lines in both said cities, and for the use and benefit of the municipalities and the *Page 338 
citizens thereof for light and power, as is now being furnished, and for the cost of this proceeding, but for no other relief."
It is well settled under the decisions of this Court that mandamus is a proper remedy to compel a public-service corporation to perform its duties for the benefit of the public. In Tel. Co., 159 N.C. 17, the difference between a mandamus and a mandatory injunction is clearly stated as follows:
"In regard to the form of remedy available, where, as in this State, the same court is vested with both legal and equitable jurisdiction, there is very little difference in its practical results between proceedings inmandamus and by mandatory injunction, the former being permissible when the action is to enforce performance of duties existent for the benefit of the public, and the latter being confined usually to causes of an equitable nature and in the enforcement of rights which solely concern individuals. High on Injunctions (4 ed.), sec. 2. Owing to the public interests involved, in controversies of this character, it is generally held thatmandamus may be properly resorted to, Godwin v. Tel. Co., supra; CommercialUnion v. Tel. Co., supra; Mahan v. Tel. Co., 132 Md. 242; Yancy v. Tel.Co., 81 Ark. 486."
In Walls v. Strickland, 174 N.C. 298, it is said by Justice Allen: "It was then held that the telephone companies serving the public must discharge their duties impartially and without discrimination, and that the right of mandamus issued by the courts was the proper remedy to enforce the performance of the duty."
It is contended, however, by the defendant that a writ of mandamus can only issue against a public-service corporation to secure the performance of a duty which it has failed to perform and will not lie to compel the performance of a continuous duty. It is insisted that there has been no actual default, and that there will not be at best until the first of January, 1921, and that the question involved is at best a moot question.
We admit that the general rule is that mandamus will not ordinarily lie in anticipation of a supposed omission of duty, and that in this case the omission of duty will not occur until 1 January.
Referring to this precise question, after stating the general rule, it is said in 18 R. C. L., p. 132, sec. 36, that, "This, however, is a general rule merely, and while mandamus will not ordinarily be available in advance of the time when the duty is to be performed, it is also recognized that extreme cases may well arise demanding the use of mandamus to control the performance of prospective duties."
The defendant contends that while it has notified the city and the plaintiff that it owed it no duty to continue to furnish light and power, and would discontinue same on 1 January next, that still for the purposes *Page 339 
of this action it might change its mind, and that therefore the Court is dealing with a moot question. This same defense was recently interposed by a light company in the State of Wisconsin. Milwaukee v. Electric Ry.,144 Wis. 386. This was also a mandamus proceeding to compel the street railway company to sprinkle the streets between 1 April and 1 November, and the action was brought before the sprinkling season began. The Court states in this case that the defendant, among other things, expressly contended "that mandamus will not lie to enforce the performance of a continuous act, and that it will not lie because the case presents a moot question only." After disposing of other contentions, the Court continuing, says:
"Neither do we see any good reason for saying that relief should not be afforded by mandamus because the duty to sprinkle is a continuous one. If the legal duty on the part of the appellant is clear, the relator should not be denied an appropriate remedy because the right sought to be enforced is not of a temporary nature. There can be no more objection to a court of law granting permanent relief by mandamus in an appropriate action than there is to a court of equity granting relief in a proper case by a mandatory injunction. That mandamus will lie to enforce the performance of a continuous legal duty has been decided at least by inference in this Court. S. v. Janesville St. R. Co., 87 Wis. 72. Such is the general current of authority elsewhere." (Citing numerous authorities.) "The contention that the case presents only a moot question we do not take seriously."
See, also, Morrison v. Wrightson, N. J., 22 L.R.A., p. 561. To the same effect is the decision of the Supreme Court of Colorado, 110 P. 197, in the case of Berkey v. Commissioners, citing City of Austin v.Cahill, 99 Tex. 172. This question was considered by the Supreme Court of Massachusetts in Attorney-General v. Boston, 123 Mass. 466. In that case the Court says: "Applications for writs of mandamus being addressed to the sound judicial discretion of the court, the circumstances of each case must be considered in determining whether a writ of mandamus shall be granted; and the court will not grant the writ unless satisfied that it is necessary to do so in order to secure the execution of the laws. But when the person or corporation against whom the writ is demanded has clearly manifested a determination to disobey the laws, the court is not obliged to wait until the evil is done before issuing the writ."
The case of Missouri P. R. Co. v. Larabie Flour Mill Co., 53 U.S. Law Ed., p. 359, involved a mandamus proceeding before the Supreme Court of Kansas, compelling the railroad company to transfer cars from another railroad company without discriminating in favor of other *Page 340 
concerns who were being similarly served. Mr. Justice Brewer, delivering the opinion of the Court, says:
"While no one can be compelled to engage in the business of a common carrier, yet when he does so certain duties are imposed which can be enforced by mandamus or other suitable remedy. The Missouri Pacific engaged in the business of transferring cars from the Sante Fe track to industries located at Stafford, and continued to do so for all parties except the mill company. So long as it engaged in such transfer it was bound to treat all industries at Stafford alike, and could not refuse to do for one that which it was doing for others. No legislative enactment, no special mandate from any commission or advisory board was necessary, for the duty arose from the fact that it was a common carrier. This was at the foundation of the law of common carriers. Whenever one engages in that business the obligation of equal services to all arises, and that obligation, irrespective of legislative action or special mandate, can be enforced by the courts. Indeed, all of these questions are disposed of by one established proposition, and that is, that a party engaging in the business of a common carrier is bound to treat all shippers alike, and can be compelled to do so by mandamus or other proper writ."
From a careful examination of the authorities, and of this Court's rulings in the past, we are satisfied that the defendant power company's contention that this proceeding should be construed to be a mandatory injunction and not a mandamus is untenable. The uniform procedure and practice of our courts has recognized the writ of mandamus as the proper and appropriate remedy in actions of this character, and it makes no difference that the duty which defendants owe the plaintiff is being denied today or unmistakably proposed to be denied tomorrow. Aside from the adjudicated cases and the procedure of our courts the defendant, by its letter of 8 January, 1920, to the plaintiff public-service company precludes it from controverting the fact that it has already denied and withdrawn any and all services to the plaintiffs as a public-service corporation. It clearly asserts that the current which it is now furnishing may be cut off at any time, and that it is only furnished as a matter of accommodation, and not in the performance of a public duty.
Thus it clearly appears that the defendant power company, while designating 1 January next as the time at which it will sever all connections and service to the plaintiffs, it has in fact asserted its present withdrawal from all obligations and duties owned as a public-service company to the plaintiff.
The current which is now being furnished is not furnished as a matter of right, but as a matter of accommodation. This we hold to be not only a denial but a present withdrawal of its public-service obligations to the plaintiff, and that this mandamus proceeding is properly instituted to obtain and enforce plaintiff's rights.
Affirmed. *Page 341